LMARION F. EDWARDS, Judge.
Acadiana Fisherman’s Co-Op (Acadiana) appeals a judgment of the district court denying its Exception of Improper Venue. We affirm.
Plaintiff, P.S. Chez Sidney L.L.C. (Chez Sidney) filed a petition against Acadiana in the 24th Judicial District Court for the Parish of Jefferson. The petition alleged that in 2001, Acadiana entered into an agreement to cut alligator meat from the Louisiana wild alligator season for Chez Sidney, at a certain price per pound. According to the pleading, Acadiana overcharged Chez Sidney in the amount of $8,741.47, which amount Chez Sidney sought to recover.
In response, Acadiana filed Exceptions of Lack of Procedural Capacity and Improper Venue. The first exception was withdrawn, leaving only the issue of venue for the trial court to determine. Following a hearing, the court denied the exception. Acadiana appeals.
It is well settled that where an exception to the venue is overruled, irreparable harm occurs and the ruling is subject to review by an appellate court, ^either via appeal or supervisory writs.[1] Because of the nature of the issues herein, we have determined to address the present case via our appellate jurisdiction.
In its exception, Acadiana averred that it was an unincorporated association with its principal business establishment in St. Martin Parish. It was further urged that the action was either a tort or breach of contract, either of which allegedly occurred in St. Martin Parish. Chez Sidney is a large alligator farming operation with its principal offices in Kenner, in the Parish of Jefferson.
At the hearing on the exception, Gabriel LeBlanc, plant manager of Acadiana, testified that the principal place of business of his company is in St. Martin Parish, and that he has no business establishments in Jefferson Parish. Sidney Guidry (of Chez Sidney) approached him, at the plant in St. Martin, about the possibility of processing alligator meat. The men discussed it and decided to proceed with the agreement. Chez Sidney would furnish Acadiana with alligator carcasses and Acadiana would de- *547 bone at a certain price per pound. On the first day of production, Chez Sidney’s chief executive officer, Zach Casey, came by and witnessed the operation. The processing and packing of the alligator meat was performed in St. Martin, the bills were prepared and payment received there. Chez Sidney’s employee picked up the meat from the St. Martin facility. No work was done, no bills paid, nor products delivered by Acadiana, in Jefferson Parish.
On cross-examination, LeBlanc stated that Acadiana invoiced P.S. Chez Sidney, which was an affiliate of another company named “Pelts and Skins.” LeBlanc understood that Guidry was representing Mr. Casey as manager of Chez Sidney’s plant in Catahoula and that Casey was the chief executive officer of the company. When negotiating the conditions of the agreement, LeBlanc knew that Casey would have final say on the terms. Payments received by Acadiana were paid from Chez Sidney in Kenner, Louisiana. LeBlanc agreed that the Chez 14Sidney’s office was in Kenner. According to LeBlanc, Casey did not contact him at any time prior to the processing of the meat, and the agreement was reached between himself and Guidry.
Sidney Guidry testified that he is the manager of Chez Sidney’s processing plant in Catahoula, in St. Martin Parish. In years past, the company had too much work skinning alligators and had contracted the meat processing to different plants. Acadiana was one plant of which Guidry was aware, and Mr. Casey, Sidney’s boss, authorized him to talk to LeBlanc. Casey makes the ultimate business decisions of Chez Sidney. The agreement with Acadia-na was reached after speaking with both LeBlanc, in St. Martin, and meeting with Mr. Casey, the owner, in Kenner. Guidry himself did not have the authority to agree to a contract.
Zachary Casey testified that he is the Chief Executive Officer of Chez Sidney, with its registered office in Kenner. He handles all the finance issues of the company, and makes the ultimate business decisions. The operation produces alligators from the wild season in September. There is a large production to be handled in September that is too much for his plant to handle. The company sought a supplier who could provide the service of cutting the overflow production in September. He sent Mr. Guidry to inspect Acadiana’s facilities to ensure the company was capable of handling the operation. After ascertaining that the company could perform, Casey called LeBlanc from his Kenner office to offer him a price per pound, which offer Le Blanc accepted. Casey informed Guidry of the agreement with LeBlanc. It was Guidry’s job to assure quality control, making certain the proper sanitation measures were in place and that there were sufficient personnel. Guidry did not have authority to contract with Acadiana. The contract with Acadiana was oral.
The trial court stated that all parties had been truthful, but while Guidry entered into a contract with LeBlanc in agreeing to process the meat, the price had |Rnot been established until after Casey spoke with Leblanc. The court found “the completion of that contract as done in two venues.” The exception was denied.
On appeal, Acadiana urges the present suit is one on open account thus that venue is governed by La. C.C. P. art. 42:
The general rules of venue are that an action against: (3) A domestic partnership, or a domestic unincorporated association, shall be brought in the parish where its principal business establishment is located.
*548 Citing another case out of this court,[2] Acadiana avers that a suit on open account is not governed by La. C.C. P. art. 76.1. However, while not styled as such, the instant petition is plainly one alleging breach of contract. Its allegations do not constitute or state a suit on open account. Under La. R.S. 9:2781(D):
For the purposes of this Section and Code of Civil Procedure Articles 1702 and 4916, “open account” includes any account for which a part or all of the balance is past due, whether or not the account reflects one or more transactions and whether or not at the time of contracting the parties expected future transactions. “Open account” shall include debts incurred for professional services, including but not limited to legal and medical services ...
While the present case might encompass an open account under the above definition, the statute clearly contemplates an action for failure to pay a debt incurred. Rather than seeking an amount past due on a debt incurred, Chez Sidney alleges that it, the debtor, was overcharged under its agreement with Acadiana, and that it overpaid. The trial court found the matter was one of contract, and we And no error in such determination. Accordingly, C.C.P. art. 76.1 is applicable:
An action on a contract may be brought in the parish where the contract was executed or the parish where any work or service was performed or was to be performed under the terms of the contract.
| (¡The Supreme Court has interpreted the article to mean that venue is proper in all parishes where the contract is executed.[3] A contract negotiated in two different parishes by mail, phone, and fax have been found to have been “executed” in both venues.[4]
In the present case, the trial court declared that it found no one was being untruthful. This statement is puzzling, since Casey testified that he called Leblanc to offer a price per pound. Le-Blanc testified that he never spoke with Casey on the telephone, and only communicated with him when Casey visited the plant after processing had begun. However, the court also indicated that the price had not been established until after Casey telephoned LeBlanc, which indicates the court did, indeed, believe Casey. It is axiomatic that reasonable evaluations of credibility by the trial court should not be disturbed on review absent documents or objective evidence that contradict the witness’s story, or unless the story itself is so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it.[5] We find no manifest error by the trial court in its acceptance of Casey’s testimony.
LeBlanc agreed and understood that Casey had final say on the terms of the contract, which was, according to the testimony, negotiated partly in Kenner, where Casey telephoned LeBlanc, and partly in St. Martin where Guidry and LeBlanc conferred. In implementing the contract, Guidry met with both LeBlanc in St. Martin and with Casey in Kenner. We find no *549 error in the determination by the trial court that the contract was executed in both parishes. The court correctly denied the exception of venue.
17For the foregoing reasons, the judgment is affirmed. Costs are taxed to Aca-diana.
AFFIRMED.

. Herlitz Construction Co., Inc. v. Hotel Investors of New Iberia, Inc., 396 So.2d 878 (La.1981); Sales Tax Collector v. Eckco Fabricators, 423 So.2d 1218 (La.App. 5th Cir.1982).

. Chehardy, Ellis, Breslin & Murray v. Amerasia Co., Inc., 96-384, (La.App. 5th Cir.11/14/96) 694 So.2d 355.

. Jordan v. Central Louisiana Electric Co., Inc., 95-1270 (La.6/23/95) 656 So.2d 988; Antin-Quealy, Inc. v. WTA Marine, Inc., 99-0952 (La.6/4/99), 735 So.2d 623

. Antin-Quealy, Inc. v. WTA Marine, Inc., supra.

. See Rosell v. ESCO, 549 So.2d at 840, 844-45 (La.1989); Stobart v. State, Through DOTD, 617 So.2d 880, 882 (La.1993).